Mr. Justice Olin
delivered the opinion of the court:
Appeal from the decree of Justice Wylie, holding the special term.
The facts undisputed in this case, so far as the same are material, may be simply stated as follows:
On the 2d of September, 1867, a conveyance was made of certain real estate, situated in this District, to Mary E. J. Dean, the wife of William W. Dean. In this deed of conveyance it is recited that the parties of the first part, (the grantors,) for the consideration of $2,475, have granted, bargained, sold, aliened, enfeoffed, released, and conveyed, and do by these presents grant, bargain, sell, alien, enfeoff, release, and convey, unto the said party of the second part, (Mary E. J. Dean,) her heirs and assigns forever, all those, &c., (describing the premises conveyed.) In what is called the habendum clause *61 of the deed we find the following language: “ To have and to hold the said pieces or parcels of ground and premises and appurtenances unto the said party of the second part, her heirs and assigns, to her and their sole use, benefit, and behoof forever
Then follows covenants of warranty of title in the grantors and covenants for further assurance.
It will, therefore, be seen that this deed of conveyance vested in Mrs. Mary E. J. Dean and her heirs an estate of inheritance in fee-simple.
It further appears in the case that, upon the execution of this deed of conveyance, Mrs. Dean’s husband and children went into occupancy of the premises granted them, she thus having seizin by law and in deed.
Thus matters remained until the fall of 1870, when William W. Dean became insane, and was removed to the Government Hospital for .the Insane, and has been there ever since confined.
On the 1th of April, 1872, Mrs. Dean executed a deed of trust to F. W. Jones, to secure the payment of about $3,000 to one Mark Young, her husband not being competent to contract, and no one authorized on his behalf joined in such conveyance.
On the 6th of December, 1872, Mrs. Dean died, but left surviving her husband and two children, born of the marriage, having made her last will and testament, whereby, she devised, or attempted to -devise, the said property to her brother-in-law, H. W. De Hart, upon certain trusts, with power to sell the same if at any time he should think it for the interest of her children. De Hart was also appointed her executor, and duly qualified. On the 17th of November, 1873, a bill in equity was filed; the complainants were Harrison M. De Hart, guardian of Mary M. and William O. Dean, Sarah C. De Hart and Harrison M. De Hart, her husband, Amelia E. Crosby and her husband, Henry E. Crosby, and John H. Kaufman.
The defendants to the bill were, William W. Dean, the husband of the grantee in the deed; Mary M. and William O. Dean, minor children of the said William W. Dean and Mary, his wife; Mark Young and Fred. W. Jones, trustees.
*62 This bill further states that the defendant, William W. Dean, was the husband of the said Mary E. J. Dean ; and that Mary and William O. Dean are the children and only heirs at law of Mary E. J. Dean ; and that the trustee, De Hart, under the will of Mary E. J. Dean, attempted to make sale of the property conveyed to her by the deed first mentioned, and obtained an offer at a fair price; but that the purchaser refused, under legal advice, to take the title, as I think he well might.
Under this bill thus filed, by De Hart such proceedings were had that a sale of the property was decreed on the 16th of December, 1873, and that sale was ratified three days thereafter. The cause was then referred to the auditor, with instructions to state the trustee Jones’s account, and to-make distribution of the fund arising from the sale,of the property.
On the 24th of February, 1874, the auditor filed his report, wherein, among other things, he says:
“ Regarding the said William W. Dean as tenant by the curtesy of said real estate, I have allowed him the value of his said tenancy from the proceeds of the sale.”
The amount of this allowance was $1,250.72, which, if deducted from the amount received on the sale of- the property, did not leave a sufficient sum to pay Young’s loan to Mrs. Dean, made to enable her to add on an additional story to the house. The report of the auditor was excepted to by Young and other creditors of Mrs. Dean; the court sustained the exceptions, and a decree was passed, which virtually deprived the husband of his estate by the curtesy, and his infant children, by his wife, Mary Dean, of a home.
On examining the proofs in the case, I think it clearly appears that Dean, the husband, paid from his own funds and earnings the entire purchase-price of this property. The-husband, not being indebted at this time, did, as many pru dent heads of families do, purchase and pay for this property, and directed the conveyance to his wife and her heirs forever, thus securing to her and their two children a home.
Upon this state of facts two questions naturally arise:
1st. Whether De Hart could file a bill in chancery-against the lunatic husband and against his two infant wards.
*63 2Ü. Whether William W. Dean had an estate as tenant by the curtesy.
A very interesting question arises under the first point t whether Mrs. Dean could make any will, agreement, or contract in reference to property acquired by her, before the pas. sage of the married woman’s act in this District. My opinion is that the act only applies in reference to property acquired after the passage of that act; in other words, the act was not retroactive; however that may be, it is not necessary to consider that question in this case.
The justice holding the special term decided that William W. Dean, the husband, had no estate by curtesy. To create an estate by curtesy Littleton says four circumstances are absolutely required for the existence of this estate, namely, 1st, marriage; 2d, seizin of the wife; 3d, issue; 4th, death of the wife. (Curtis Digest, title V, Curtesy, chap. 1, § 4, 6th page, 140.) Tenancy by the curtesy, says Kent, vol. 4, page 27, is an estate for life, created by the act of the law,, when a man marries a woman seized at any time during the coverture of an estate of inheritance, in severalty, in coparcenary, or in common, and hath issue by her, born alive, and which might by possibility inherit the same estate as heir to the wife, and the wife dies in the life-time of the husband, he holds the land during his life by the curtesy in England, and it is immaterial whether the issue be living at the time of the seizin or at the death of the wife, or whether it was born at or before or after the seizin. Seizin is of two kinds: seizin in law arises when the grantor of real estate gives the right of present possession to the grantee; seizin in deed is the actual possession of freehold estate. (§ 4, Kent’s Commentaries, 386; 1 Hillard on Real Property, 82, 83 ; 2 Burril, 920, title Seizin.) By the common law of England, to entitle a husband to curtesy in the estate of his wife, it was necessary that she should be seized during coverture, in law and in deed, but that rule does not prevail in any State of the Union, so far as I can discover; it is usually held that a seizin in law by the wife during coverture would be sufficient to entitle the husband to an estate by curtesy, unless the property was held at the time adversely.
No one looking at this deed of conveyance to Mrs. Dean *64 can fail to see but that it conveys to her and her heirs an estate of inheritance in fee-simple. There is no dispute that, upon execution of the deed, the husband and wife entered into the possession of these premises, and continued their occupancy until the death of the wife, nor that the wife is dead, and the children of the wife and the husband are still living.
Here, then, are all the facts undisputed which create an estate of tenant by the curtesy: 1st, marriage; 2d, issue born alive; 3d, an estate of inheritance with seizin in law and in deed; 4th, death of the wife. If these facts do not give the husband an estate by the curtesy, he never can have such estate.
The decree in this case, I think, should be reversed, and the bill ordered to be dismissed, for want of jurisdiction of the court at special term to make any decree for the sale of the property in question; and that the complainant pay the costs of the suit.